**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

JUSTIN JAMES HINZO,

       Plaintiff,

v.                                        CIV 10-0506 JB/CG

STATE OF NEW MEXICO
DEPARTMENT OF CORRECTIONS, et al.,

       Defendants.

# INITIAL PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

This *pro se* prisoner civil rights action was removed from state court. It is before

this Court on Defendants' transmittal of state court documents and Plaintiff's motions.

*See Doc. 10-1* (state court records containing pending motions transmitted by

Defendants); *see also Docs. 5, 6, 7, 9, 11, 17, 19* (documents containing motions filed

by Plaintiff in federal action). Among other things, I recommend that Plaintiff be

required to file an amended complaint and that his request for injunctive relief be

denied.

## I.  Defendants & Removal

Plaintiff has been incarcerated at different New Mexico facilities since 2004. He

is presently housed at the Penitentiary of New Mexico ("PNM") in Santa Fe and filed suit

in state court on December 31, 2009.  He used the form "tort complaint" designed for

prisoners to pursue claims under the New Mexico Tort Claims Act.  His basis for relief is

denial of medical care.  *See Doc. 1-1* at 1.  The state court granted Plaintiff's request for

"free process" by waiving the state filing fee, *see Doc. 10-1* at 41, but denied Plaintiff's

request for "free" service of the summons, *id.* at 25, and motion for appointment of

counsel, *id.* at 39.  It did not rule on other motions filed by Plaintiff.

Plaintiff's state complaint purports to sue many defendants, only one of whom is

specifically named:

- George Tapia, "Warden at PNM"
- "State of New Mexico Department of Corrections"
- "Wexford" and "all" of its "medical directors from 2004-2006"
- "C.M.S." and "all" of its "medical directors from 2006-2009"
- "L.C.C.F." and its "medical departments," "directors," and "all doctors under they're (sic) care at this time"
- "C.N.M.C.F." and its "medical departments," "directors," and "all doctors under they're (sic) care at this time"
- "W.N.M.C.F." and its "medical departments," "directors," and "all doctors under they're (sic) care at this time," and
- "S.N.M.C.F." and its "medical departments," "directors," and "all doctors under they're (sic) care at this time."

*Doc. 1-1* at 1.  Currently, Joe R. Williams is  Secretary of the New Mexico Corrections

Department ("Department"),[1] Defendant Tapia is the Deputy Director for the

Department's Adult Prisons Division,[2] and Lawrence Jaramillo is the Warden of PNM.[3]

"LCCF" is the "Lea County Correctional Facility," a privately-operated facility located in

---

[1]   *See* http://corrections.state.nm.us/secretary.html.

[2]   *See* http://corrections.state.nm.us/prisons/intro.html.

[3]   See http://corrections.state.nm.us/prisons/pnm.html.

Hobbs, New Mexico.[4]  "CNMCF," "WNMCF," and "SNMCF" are, respectively, the

Central New Mexico Correctional Facility located in Los Lunas, New Mexico, the

Western New Mexico Correctional Facility located in Grants, New Mexico, and the

Southern New Mexico Correctional Facility located in Las Cruces, New Mexico.  All are

state-operated facilities.[5]  "CMS" or Correctional Medical Services, Inc., provides

medical services for all of these facilities.[6]  "Wexford" or Wexford Health Sources, Inc.

has also "provided medical care for inmates" under a "a contract with the New Mexico

Department of Corrections."[7]

Plaintiff's state complaint specifically alleges a violation of the Eighth

Amendment.  As such, four defendants removed the action to this Court, although it is

not entirely clear at this point which parties did so and who represents them.  The notice

of removal filed by attorney Deborah Wells lists Secretary Williams, Director Tapia, the

Department, and CMS as the defendants who joined in removal.  *See Doc. 1* at 1, 2.  In

contrast, the docket entry for the notice does not mention Secretary Williams and

instead lists Wexford as the fourth defendant.  *See id.* (docket entry accompanying

notice).  Also, the answer filed by Ms. Wells and the accompanying docket entry is on

behalf of Secretary Williams, Director Tapia, the Department, CMS, and a "Lianne

Lopez," *see Doc. 2* at 1, 3, but I have not found Ms. Lopez mentioned by name in any of

---

[4]  *See* http://corrections.state.nm.us/prisons/privateinst.html.

[5]  *See* http://corrections.state.nm.us/prisons/publicinst.html.

[6]  *See* www.cmsstl.com/NewMexico.aspx.

[7]  *See Lymon v. Aramark Corp., et al.,* CIV 08-386JB/DJS (Doc. 93 at 2).

the documents in the record.  Similarly, after removal, attorney Edward Shepherd

entered his notices of appearance for Director Tapia, the Department, and Wexford.  He

did not enter an appearance on behalf of CMS.  *See Docs. 13-15.*  Mr. Shepherd filed

an answer on behalf of Wexford only, *see Doc. 16* at 1, but the docket entry for this

answer indicates that it was also filed on behalf of the Department and CMS, *see id.*

(docket entry accompanying Wexford's answer).

## II.  It Is Unclear Whether Plaintiff Only Challenges The Events That Occurred On April 30, 2009 And Thereafter, And Unclear Which Defendants He Intends To Sue

Plaintiff recounts his history back pain that started in 2004, when he slipped on a

chair at LCCF while climbing down from a from a top bunk.  He attributes his initial injury

to a lack of "proper" bunk stairs.  He complains of the diagnosis and treatment (or lack

thereof) that he received at various prisons for years thereafter, asserting that he was

not taken seriously or given the proper diagnostic tests to discover the severity of his

injury.  *See Doc. 1-1* at 2-5.  He attributes these failures to unspecified prison officials

not "want[ing] to spend the money for an expensive surgery" that "Plaintiff had

requested a long time ago."  *Id.* at 5.  Eventually, Plaintiff underwent surgery on April 28,

2009.  *Id.*  He demands damages in the amount of "$400 - $600 per day" for "the past 5

years."  *Id.* at 3.

Given his broad categories of defendants and method of calculating damages, it

would seem that Plaintiff is suing every medical provider and supervisor for every

instance of medical treatment since 2004.  The record as a whole, however, supports a

different conclusion because some documents indicate Plaintiff is suing for a limited

time frame and only a few defendants.

For example, Plaintiff understands the effect of a statute of limitations and, therefore, has repeatedly stressed that he is only suing for the events that occurred on and after April 30, 2009,[8] and has requested permission to amend.  *See Doc. 6* at 1; *Doc. 9* at 1.  He explains that April 30, 2009 is the date he was released from the hospital after his surgery and transported back to CNMCF.  He asserts that, not only was he released too soon after surgery, he was not taken back to prison in an ambulance.  Instead, was "forced . . . to sit straight up," shackled, while he was transported in a prison van for two hours and at "80 mph."  *Id.* at 5; *see also Doc. 7* at 6. He claims that as a result of the ride in the prison van, he reinjured his back.  When he complained of the new injury and pain, he was accused of malingering.  Instead of receiving the dosage of pain medication prescribed by his surgeon, "Dr. Arnold lowered the dose."  *Doc. 1-1* at 5.  Plaintiff asserts that he did not fare better after he was transferred to PNM.  There, "Dr. Stover" also would not increase his dosage of pain medication and simply prescribed physical therapy.  *Id.* at 6.  Ultimately, Plaintiff reveals

---

[8]  Although Plaintiff rarely fails to reiterate that he became injured and suffered pain for years, he emphasizes in several submissions that he "has met the statute of limitations [because] the injury he is persueing (sic) damages for, is the back injury sustained April 30, 2009 during transport by the [Department ].  The ORIGINAL injury occurred in 2004 . . .  Plaintiff is asking for the appointment of counsel [and] would like to "AMEND" the original *"TORT CLAIM*."  *Doc. 6* at 1 (emphasis original); *see also Doc. 7* at 5-7 ("The plaintiff is bringing this lawsuit against all the defendants for . . . causeing (sic) the injury immediately after the surgery the plaintiff received on April 28, 2009 ;" "As stated the plaintiff is seeking damages for the injury he received on April 30, 2009 while being transported;"  "yes, the plaintiff did receive the original back injury in 2004 . . . [s]o the plaintiff filed the "tort claim" because the plaintiff has been "FORCED" to suffer the past . . . six years, but because the plaintiff's injury occurred on April 30, 2009 that he is suing for now.  The "*EXACT*" same disk that was operated on April 28,2009[,] was re-injured during transport") (emphasis original); *Doc. 9* at 2 ("plaintiff filed the tort claim due to the injury he received on April 30, 2009 while being transported").

that the pain medication he seeks is morphine.  *E.g., Doc. 19* at 2 ("plaintiff has been on

a specific medication since 2008 . . . morphine at 120 mg twice a day").

Also, by the captions he has used in state court filings, Plaintiff indicates that he

is only suing a few defendants.  It is not yet clear, however, which defendants he has

settled upon.  For example, some state captions include the PNM warden (incorrectly

designated as Director Tapia), Secretary Williams, the Department itself, CMS,

Wexford, Dr. Arnold, and perhaps a Dr. William Mizell.  *See Doc. 10-1* at 15, 19, 27, 29,

31, 33.  Plaintiff specifically asked the state court for permission to add Dr. Arnold, Dr.

Mizell, and Secretary Williams as defendants, *id.* at 35, and later asked for permission

to add only Secretary Williams and Dr. Arnold, *id.* at 4.  Those motions are still pending.

In a motion filed with this Court, Plaintiff lists as defendants the Department, Secretary

Williams, Director Tapia (incorrectly designated as warden of PNM), Wexford, CMS,

and asks to add as "John Doe," the officer who "was driving the transport van on April

30, [20]09" and "who works at" PNM.  *Doc. 11* at 1, 2.

## III.  Analysis

### *A.  Screening*

Although I have not found a Tenth Circuit decision on point, it appears that the

trend in other circuits is to requiring screening of *pro se* prisoner actions that have been

removed, as here, based on federal question jurisdiction.[9]  That is, this Court must

---

[9]  *E.g., Davis v. Goss,* 2010 WL 1872871 at * 2 (E.D. Ky. 5/10/10) ("Davis' underlying claims have not been screened . . . under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Screening of *pro se* prisoner cases is appropriate under the statutory framework, whether a case is initiated in state or federal court.") (citing *Duff v. Yount,* 51 Fed. App'x 520, 521 (6th Cir. 2002) (per curiam);  *Crooker v. United States,* 2009 WL 6366792 (W.D.  Pa. 11/20/09); *Ruston v. Dallas County,* 2008 WL 958076 (N.D. Tex. 4/9/08), *cert. dismissed,* 130 S. Ct. 267 (2009),

dismiss "the complaint, or any portion of the complaint," if it "is frivolous, malicious, fails

to state a claim upon which relief may be granted; or . . . seeks monetary relief from a

defendant who is immune from such a claim." 28 U.S.C. § 1915A(b)(1) & (2). Because

of the uncertainty about the time frame for Plaintiff's claims and who he intends to name

as defendants, Plaintiff should be required to file an amended complaint. That

amendment should also be subject to screening before any additional defendants are

served.

### B. Plaintiff's Motions For Injunctive Relief

In state court, Plaintiff sought immediate injunctive relief in the form of a court

order for "proper treatment," by which he means being "given medication that will

reduce the excruciating pain, or whatever treatment will stop the pain." *Doc. 10-1* at 23.

That motion is still pending. In this Court, his request is styled as a motion for a

temporary restraining order. *See Doc. 12* (notice that the motion is forthcoming); *Doc.*

*19* (motion). He asserts that an unnamed woman doctor is refusing to see him when he

asks, *Doc. 19* at 1-3, changed his dosage of morphine to "20 mg of methadone," *Doc.*

*12* at 1, and has denied him access to a "TENS unit," *id.* at 2, or permission for a

double mattress, *id.* at 2; *Doc. 19* at 4. He claims her behavior is "malicious" and in

---

and distinguishing *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1315 (11th
Cir. 2002), which held screening not applicable to case removed on basis of diversity
jurisdiction, where claims rested solely on state law and were "unrelated to prison conditions");
*see also Smith v. Milwaukee Secure Detention Facility,* 2010 WL 960012 at * 1 (E.D. Wisc.
3/12/10) (denying reconsideration in a prisoner civil rights case that had been removed,
screened, and dismissed); *Fodor v. Henderson Police Dept.,* 2010 WL 2161810 at * 1 (D. Nev.
3/30/10) ("This case was filed in state court . . . removed to this court [which] will screen
Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Federal courts are authorized to conduct a
preliminary screening in any case in which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).").

retaliation for filing this lawsuit.  *See Doc. 19* at 4.  He thus asks this court to issue an

order directing CMS to:

- "'STOP' the new doctor or any other doctor from changeing (sic) meds or denying things recommended to help relieve the severe pain," *Doc. 12* at 2;

- "stop causeing (sic) the plaintiff unnecessary pain and suffering and emotional distress, *Doc. 19* at 3;

- not make "drastic changes to the plaintiff until this lawsuit is resolved," *id.;*

- "put the plaintiff back on the medication the plaintiff was on that gave him t he most pain relief OR puts (sic) the plaintiff on a dose of medication that provides relief," *id.;*

- "provide the plaintiff with his double mattress he had for (2) years," *id.;*

- "provide proper and adequate medical care until this lawsuit is resolved;" *id.;*

- "stop acting out of malice and intentionally inflicting unnecessary pain and emotional distress," *id.;* and

- "being vindictive toward the plaintiff and attempt to properly treat the plaintiff, and ***stop withdraw symptoms,***" *id.* (emphasis added)

Thus, Plaintiff's assertions are mainly directed to a physician who is unnamed and not

yet a defendant to this action, and to Department officials who can carry out any Court

order.  As discussed above, however, Plaintiff has not named the current warden of

PNM, and it is unclear whether Secretary Williams has made an appearance in any

capacity.

Under Federal Rule of Civil Procedure 65(b)(1), even assuming Plaintiff's

submissions qualify as the requisite "specific facts in an affidavit or verified complaint,"

this Court cannot issue a temporary restraining order without notice to adverse parties

or their attorneys except upon a clear showing of "immediate and irreparable injury . . .

will result."  Similarly, even if the adverse party or parties were provided the proper

notice, to be entitled to a preliminary inunction, Plaintiff must show four things:

> (1) he . . . will suffer irreparable injury unless the injunction issues; (2) the
> threatened injury outweighs whatever damage the proposed injunction
> may cause the opposing party; (3) the injunction, if issued, would not be
> adverse to the public interest; and (4) there is a substantial likelihood of
> success on the merits.

*Nova Health Sys. v. Edmondson,* 460 F.3d 1295, 1298 (10th Cir. 2006) (quotations and

citation omitted).

At the very least, Plaintiff fails to clearly establish immediate injury or a likelihood

of success.  The Court is not unsympathetic to the fact that morphine withdrawal may

be extremely unpleasant.  However, it is clear from Plaintiff's descriptions that he has

been receiving continual medical attention, diagnostic care, therapies, and medicine.

He has not received exactly what he wants when he wants it, but it is well-settled that

neither medical malpractice, nor a mere disagreement over a "diagnosis" or "prescribed

course of treatment," will establish an Eighth Amendment violation.  *Perkins v. Kansas*

*Dep't of Corrections,* 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble,* 429

U.S. 97, 104-07 (1976)).  Based on the same rationale, federal courts have also held

that detoxification efforts do not amount to a violation of the Constitution when the plan

involves substituting medications.[10]  Finally, it is in the Court's discretion whether to

---

[10]  *See French v. Daviess County, Kentucky,* 2010 WL 1780252 at * 2 (6th Cir. 5/5/10)
("Despite French's serious medical need for Xanax, jail officials did not have a sufficiently
culpable state of mind when deciding to place him on a detoxification protocol  . . .  but no "cold
turkey" action was taken here. . . .   Instead, Valium was used to gradually wean French from
Xanax. . . .   Courts have found Xanax detoxification protocols, using such substitutes, to be
constitutional.") (citing *Chatham v. Adcock,* 334 F. App'x 281, 288-89 (11th Cir. 2009); *Burdette
v. Butte County,* 121 Fed. App'x 701, 702 (9th Cir. 2005); *Thomas v. Webb,* 39 F. App'x 255, 256

exercise supplemental jurisdiction in the absence of a viable federal claim.  If Plaintiff's

Eighth Amendment claim is dismissed before trial, this Court will most likely decline to

exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and remand the case to

state court.  "When all federal claims have been dismissed, the court may, ***and usually***

***should,*** decline to exercise jurisdiction over any remaining state claims."  *Smith v. City*

*of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis

added).[11]

### C.  Plaintiff's Other Pending Motions

Among other things, Plaintiff filed motions with the state court asking that it take

notice of, and supplement the record with, copies of documents demonstrating that he

has exhausted his administrative remedies.  *See Doc. 10-1* at 6, 8.  It is true that the

Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative

---

(6th Cir. 2002)); *see also Boyett v. County of Washington,* 282 Fed. App'x 667, 674 (10th Cir.) ("Plaintiffs contend the decision by Washington County officials to take away Boyett's prescription Methadone when he entered the facility violated his rights.  Boyett's doctor had prescribed the Methadone to treat his alcohol withdrawal symptoms, but because Methadone is a narcotic, he was not allowed to keep it in the jail.  To replace the Methadone, Physician's Assistant Steele prescribed 0.1 mg of Clonidine  to be taken twice daily.  Steele's prescription of substitute medication for Boyett does not demonstrate deliberate indifference."), *cert. denied,* 129 S. Ct. 647 (2008).

[11]  *See also Nalley v. New Mexico Behavioral Health Institute,* 344 Fed. App'x 468 (10th Cir. 2009) (*pro se* action, parties not diverse, failure to state claim under § 1983 – "Accordingly, the district court correctly dismissed . . . the claims [and thus] permissibly declined to exercise supplemental jurisdiction over any state law claims. 28 U.S.C. § 1367(c)(3)."); *c.f., Summum v. Duchesne City,* 482 F.3d 1263, 1276 n. 6 (10th Cir. 2007) (noting that it "reversed a district court's decision to exercise supplemental jurisdiction over claims involving Utah's Free Exercise and Establishment Clauses when the court had resolved the federal claims prior to trial" and cited *Snyder v. Murray City Corp.,* 124 F.3d 1349, 1354-55 (10th Cir. 1997), *vacated in part on other grounds,* 159 F.3d 1227 (10th Cir. 1998), *cert. denied,* 526 U.S. 1039 (1999), which observed that "when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over pendent state law claims and allow the plaintiff to pursue them in state court" and that "this general practice is particularly appropriate" when state law is uncertain and complex), *vacated on other grounds,* 129 S. Ct. 1523 (2009).

remedies before filing a § 1983 action concerning prison conditions. *See* 42 U.S.C. §

1997e(a). And, in general, an "inmate who begins the grievance process but does not

complete it is barred from pursuing a [federal] claim under the PLRA for failure to

exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th

Cir. 2002). However, in federal court and for the federal claim, it is not Plaintiff's burden

to plead or prove exhaustion. *E.g., Roberts v. Barreras,* 484 F.3d 1235, 1240 (10th Cir.

2007) (burdens lie with Defendants). Furthermore, the Court can order a *Martinez*

Report to help resolve exhaustion issues either separately or in conjunction with the

Eighth Amendment claim.[12]   While the Court does not express an opinion on the merits

of whether Plaintiff's claims are exhausted, the documents he tendered are noted and,

in that respect, his motions to "supplement" are granted.

Plaintiff also requests that this Court appoint counsel, *see Docs. 6, 7, 17,*

primarily because he lacks the finances necessary to compile copies of court filings,

documentary evidence, and subpoenas for witnesses he intends to present at a jury

trial, *see also Doc. 10-1* at 29-32. Although 28 U.S.C. § 1915(e)(1) authorizes this

Court to appoint an attorney for those proceeding *in forma pauperis,* the Sixth

Amendment does not guarantee right to counsel in civil cases and, thus, there is no

---

[12]   *See Zarska v. Higgins,* 171 Fed. App'x 255, 257 & n.1 (10th Cir. 2006) (case where district court dismissed complaint on exhaustion grounds after *Martinez* Report, and footnote notes that a "*Martinez* report is a judicially authorized investigative report prepared by prison officials to help the court determine if a *pro se* prisoner's allegations have any factual or legal basis.") (internal quotations and citations omitted); *see also Starks v. Lewis,* 313 Fed. App'x 163, 166 n.2  (10th Cir. 2009) ("'Under certain circumstances, a district court may, notwithstanding failure to exhaust, proceed to the merits of the claim and dismiss with prejudice if it concludes a party would be unsuccessful even absent the exhaustion issue.'") (quoting *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1139 (10th Cir. 2005), and citing  42 U.S.C. § 1997e(c)(2), which provides that claims subject to dismissal under § 1915A can be dismissed "without first requiring the exhaustion of administrative remedies.").

automatic right to counsel in prisoner civil rights cases under § 1983.  *E.g., Parker v.*

*Bruce,* 109 Fed. App'x 317, 321 (10th Cir. 2004) (citing *Wendell v. Asher,* 162 F.3d 887,

892 (5th Cir. 1998), *Abdur-Rahman v. Mich. Dep't of Corr.,* 65 F.3d 489, 492 (6th Cir.

1995), *Poole v. Lambert,* 819 F.2d 1025, 1028 (11th Cir. 1987), *MacCuish v. United*

*States,* 844 F.2d 733, 735 (10th Cir. 1988), and *Bishop v. Romer,* 1999 WL 46688 at * 3

(10th Cir.), *cert. denied,* 527 U.S. 1008 (1999)).  The factors this Court should consider

include "'the merits of the litigant's claims, the nature of the factual issues raised in the

claims, the litigant's ability to present his claims, and the complexity of the legal issues

raised by the claims.'" *Rucks v. Boergermann,* 57 F.3d 978, 979 (10th Cir. 1995)

(quoting *Williams v. Meese,* 926 F.2d 994, 996 (10th Cir. 1991)).

The sole federal claim is for a denial of medical care.  Plaintiff's filings amply

demonstrate that he is capable of providing the Court not only with the detailed facts

underlying the claim, but also that he is conversant with legal concepts such as statutes

of limitation, motions to amend, exhaustion of administrative remedies, and injunctive

relief.  Accordingly, not only is consideration of appointment of counsel premature, it is

unwarranted.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff file an amended complaint that specifies with precision:  (a)
   the time frame for which he is suing; (b) each defendant he is
   suing; (c) what each defendant did or did not do that is the basis for
   recovery; (d) the damages and other relief sought against each
   defendant; (e) that Plaintiff seeks to recovery both under the New
   Mexico Tort Claims Act and § 1983, and; (f) whether a jury trial is
   demanded;

2. The Clerk forward a copy of the form "Civil Rights Complaint

Pursuant To 42 U.S.C. § 1983" to Plaintiff for him to use as a reference in preparing his amended complaint;

3.  The Clerk also forward a copy of this District's "Guide For *Pro Se* Litigants (July 2010)" to Plaintiff;

4.  Because the state court waived the filing fee for initiating the action and Defendants paid the federal filing fee upon removal of the action, *see Doc. 4,* no other filing fees are necessary, *see Docs. 6, 8,* but the amended complaint should nonetheless be screened under 42 U.S.C. § 1915A;

5.  Plaintiff's motions to amend and/or add defendants *(Docs. 6, 9, 11 and 10-1 at 4, 35)* be denied in light of the recommendation that he file an amended complaint;

6.  Plaintiff's motions for injunctive relief *(Docs. 19 and 10-1 at 23)* be denied;

7.  Plaintiff's motions to "supplement" *(Doc. 10-1 at 6, 8)* be granted;

8.  Plaintiff's motions for appointment of counsel *(Doc. 6, 7, 9, 17)* be denied; and

9.  Plaintiff's motion for an extension of time to "respond or object" *(Doc. 5)* and his requests for discovery *(Doc. 10-1 at 15, 31)* be denied as moot.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE