UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JUSTIN JAMES HINZO,

        Plaintiff,

v.                                                                CIV 10-0506 JB/CG

STATE OF NEW MEXICO
DEPARTMENT OF CORRECTIONS, et al.,

        Defendants.

## ORDER FOR MARTINEZ REPORT

Plaintiff Justin James Hinzo has filed a lawsuit under 42 U.S.C. § 1983 against multiple defendants. (*See* Pl's Third Amended Complaint, Doc. 30). The matter now comes before the Court, *sua sponte*, for an Order directing the Defendants to prepare a *Martinez* report.

Plaintiff complains that he suffered two significant back injuries while he was incarcerated by the New Mexico Corrections Department and that he was denied adequate and effective medical care for those injuries in violation of the Eighth Amendment. Plaintiff was incarcerated at the Lea County Correctional Facility ("LCCF") in 2004 and he suffered a significant back injury when he fell while trying to climb down from the top bunk in his cell. (*See, e.g., Id.* at 4). Plaintiff sought medical treatment for his injury but a doctor, John Doe at LCCF, ignored Plaintiff's complaints of severe pain and merely prescribed a mild painkiller. (*Id.* at 13). It took over 6 months of continuous complaints about back pain before Dr. John Doe sent Plaintiff for an x-ray. (*Id.*). When the x-ray did not show any significant injury, Dr. John Doe accused Plaintiff of lying about his pain and wrote in Plaintiff's file that

he was attempting to get high on pain medication. (*Id.*). Plaintiff filed grievances against Dr. Doe but they were denied. (*Id.*).

Plaintiff was transferred to the Central New Mexico Correctional Facility ("CNMCF") in the summer of 2005. (*Id.* at 13-14). Because of the note about the potential abuse of pain medication, CNMCF doctors continued to ignore his claims of severe pain and requests for treatment. (*Id.* at 14). It was not until the summer of 2006 that Plaintiff was sent for a "cat scan" which ultimately revealed that Plaintiff had suffered a herniated disc at the L5-S1 level in his spine and that the disc was pressing on the sciatic nerve. (*Id.*). A neurosurgeon then recommended that Plaintiff undergo a "fusion" surgery and he further recommended an MRI to get a better picture of the condition of Plaintiff's spine. (*Id.*).

Shortly thereafter Plaintiff was transferred to the Western New Mexico Correctional Facility. (*Id.*). Plaintiff advised the medical staff of the surgery recommendation and of his continuing pain but the doctors refused to prescribe any stronger painkillers that what had initially been prescribed at LCCF. (*Id.*). Plaintiff received an MRI in late 2006 which confirmed the need for back fusion surgery. (*Id.*). Plaintiff alleges that Wexford Medical Services, which provided medical care for the facilities in which Plaintiff was incarcerated, refused to pay for the surgery due to its cost. (*Id.* at 15). Plaintiff instead received ineffective alternate treatments, unduly elongating his suffering. (*Id.*). In addition, doctors at CNMCF, the Penitentiary of New Mexico ("PNM") and Southern New Mexico Correctional Facility ("SNMCF") continued to ignore his complaints of severe pain and refused to provide adequate pain medication. (*Id.* at 15-16). It was not until 2008 that doctors at PNM began prescribing MS Contin, an opiate, to help alleviate Plaintiff's pain. (*Id.* at 17). The doctors at PNM further began pressuring Defendant Correctional Medical

Services, which had succeeded Wexford as the provider of medical care to inmates, to pay for the fusion surgery. (*Id.*). The surgery was finally performed in April of 2009, almost five years after the initial injury took place. (*Id.* at 17).

Despite the need to convalesce following the surgery, Plaintiff was transported back from the hospital only a day and a half after the surgery. (*Id.*). Against doctors' recommendations, Plaintiff was transported sitting up and fully shackled. (*Id*). Plaintiff alleges that the driver drove at a high rate of speed and veered off the road several times, resulting in a second significant back injury. (*Id.* at 17-18). Plaintiff alleges that the doctors ignored his claims of severe pain and did not check to see whether he had suffered a second spinal injury during the transport. (*Id.*). It was not until August of 2009 that Plaintiff received an MRI. (*Id.* at 19). The MRI revealed a new bulge in the L5-S1 disc. (*Id.*). Based on those results, a neurosurgeon recommended a second fusion surgery, though he could not guarantee that it would successfully alleviate the pain. (*Id.*).

Despite the recommendation, CMS has consistently refused to pay for a second surgery. (*Id.*) A doctor at PNM advised Plaintiff that he would "just have to deal with [the pain]." (*Id.*). In addition, doctors at PNM began to decrease Plaintiff's dosage of pain medication with no medical justification. (*Id.* at 19-20). A Doctor Clyde then discontinued Plaintiff's pain prescription entirely, forcing him to suffer through severe withdrawal. (*Id.* at 20-21). Repeated grievances and complaints have been routinely denied and Plaintiff continues to experience severe pain. (*Id.*). He alleges that, as a result of the Defendants' deliberate indifference to his medical needs since 2004, his injuries have become permanent and irreparable. (*See, e.g.*, *Id.* at 8, 22-23).

The purpose of a *Martinez* report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1009 (10th. Cir. 1991) (citing *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978)). This Court may order a defendant to investigate the incident or incidents underlying a lawsuit and to submit a report in order to develop a factual or legal basis for determining whether Plaintiff has a meritorious claim. *See, e.g.*, *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). A *Martinez* report may be used in a variety of contexts, including motions for summary judgment or a *sua ponte* entry of summary judgment. When a *Martinez* report is used for summary judgment purposes, the *pro se* Plaintiff must be afforded an opportunity to present conflicting evidence to controvert the facts set out in the report. *Hall*, 935 F.2d at 1109.

Wherefore, to assist the Court in evaluating Plaintiff's claims in this matter,

**IT IS HEREBY ORDERED THAT:**

1.  Defendant shall prepare a *Martinez* report addressing the claims raised in Plaintiff's *Civil Rights Complaint*, (Doc. 30), by:

    a.  Setting forth the facts needed to resolve the claims including, but not limited to: the names of any persons who dealt directly with Plaintiff with regard to the medical treatment at LCCF, CNMCF, PNM, WNMCF, and SNMCF that is the subject of his complaint, or who witnessed or made decisions with regard to such treatment; whether any records or documents exist pertaining to such treatment and, if so, a description of those records and documents and their contents; and whether any contracts, policies, procedures, protocols, laws, or regulations address such medical treatment and, if so, a

4

description of those contracts, policies, procedures, protocols, laws, or regulations and their contents.

    b.  Providing copies of all records and documents pertaining to the medical treatment or matters referred to in the foregoing sub-paragraph a. Such records shall include, but are not limited to, Plaintiff's medical records during the period of his incarceration and any records in Defendant's possession relating to Plaintiff's medical treatment at St. Vincent's Hospital, Loveless Hospital, or any other medical facility during his incarceration.

    c.  Providing affidavits in support of the report, if necessary; and

    d.  Providing a copy of the administrative grievance procedure for inmate complaints about medical treatment that was in effect during the relevant time period in Plaintiff's Complaint and copies of all records and documents pertaining to Plaintiff's exhaustion of prison administrative remedies with respect to his claims.

    e.  Providing the Court with the names, if known, of all unidentified Defendants in this case and the last known work or home addresses for such Defendants so as to enable service of the summons and complaint.

  2.  The records and documents submitted with the report may be submitted simultaneously with the report, but the submission of documents alone, or documents submitted with an index but without an accompanying report, shall not be considered in compliance with this Order.

  3.  The Court is aware of the potential sensitivity of the materials that may be contained in corrections files and that there may be valid reasons for keeping confidential

some of the contents of such files. Therefore, Defendant may redact confidential portions of the report, or any records submitted with the report, provided that he also file a memorandum setting forth any objections he might have to Plaintiff being permitted to review the redacted portions of the report, records, or documents. If Defendant does not submit such a memorandum, Plaintiff shall be permitted to review the contents of the report and the records and documents submitted with the report. Defendant's memorandum, if any, shall be served on the Plaintiff, who shall have fourteen days after the date of service of the memorandum to file and serve a response to the memorandum. The Court will review the Defendant's memorandum, if any, and any responses filed by Plaintiff, to determine whether the redacted portions of the report, records, or documents should be disclosed to Plaintiff. If necessary, the Court will review the redacted portions of the report, records, or documents in camera before making its determination.

4. All records and documents submitted with the report must be submitted with an index. The index must identify each record and document submitted by number, and each record and document must be marked with a tab or label showing its number. Additionally, the report and each record and document submitted with the report must have its pages numbered using Bates stamps, or a similar numbering system.

5. A complete copy of the report must be provided to chambers, in addition to the copies that are filed with the Court and served on Plaintiff.

6. Defendant shall file the *Martinez* report on or before January 13, 2012.

7. Plaintiff shall file and serve his response to the *Martinez* report on or before February 13, 2012.

8. Defendant shall file and serve his reply, if any, to Plaintiff's responses on or before March 1, 2012.

**THE PARTIES ARE HEREBY GIVEN NOTICE** that the *Martinez* report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua ponte*; as such, the parties should submit whatever materials they consider relevant to Plaintiff's claims. See *Hall*, 935 F.2d at 1106.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE