### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

JUSTIN JAMES HINZO,

       Plaintiff,

vs.                                                                                       No. CIV 10-0506 JB/CG

STATE OF N.M. DEPT. OF CORRECTIONS,
JOE WILLIAMS, GEORGE TAPIA, WEXFORD,
CORRECTIONAL MEDICAL SERVICES, DR. FNU ARNOLD,
DR. WILLIAM MIZELL, DR. TONY LNU, DR. DEBRA CLYDE,
DR. JOHN STOVER, DR. JOHN DOE (L.C.C.F.),
DR. JOHN DOE (C.N.M.C.F.), DR. JOHN DOE (W.N.M.C.F.),
CORRECTIONAL OFFICER JOHN (PRIMO) DOE,
WAYNE GALLEGOS, R.N. LIANE LOPEZ,
DEPUTY WARDEN JERRY ROARK,
LAWRANCE JARAMILLO WARDEN P.N.M., G.E.O.,

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court: (i) on the Court's Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, filed December 14, 2010 (Doc. 29); (ii) under 28 U.S.C. § 1915A, on Plaintiff Justin James Hinzo's third amended Prisoner's Civil Rights Complaint, filed January 4, 2011 (Doc. 30)("Third Amended Complaint"); and (iii) on the Third Amended Complaint as further amended by Hinzo's Motion by the Plaintiff Pro Se Requesting Permission to Add One Last Defendant to the Complaint; G.E.O., filed March 8, 2011 (Doc. 37)("Supplement to Third Amended Complaint").  The primary issues are: (i) whether any of Hinzo's claims are time-barred; (ii) whether Hinzo may pursue 42 U.S.C. § 1983 claims against Defendant State of New Mexico Department of Corrections; (iii) whether Hinzo has stated a plausible 42 U.S.C. § 1983 claim for deliberate indifference against Defendant Joe Williams or Defendant Correctional Medical Services relating to the injuries Hinzo allegedly received during

the 2009 incident where he was transported by van following his surgery; (iv) whether Hinzo can maintain a 42 U.S.C. § 1983 claim for deliberate indifference based on a slip-and-fall incident on prison steps; (v) whether Hinzo can maintain 42 U.S.C. § 1983 claims on the basis that Williams, and Defendants George Tapia, Lawrance Jaramillo, Wayne Gallegos, and Jerry Roark failed to grant relief on his grievances relating to his allegedly inadequate medical care or failed to otherwise intervene to correct the alleged constitutional violations for improper medical care; (vi) whether Hinzo has stated a plausible 42 U.S.C. § 1983 claim for deliberate indifference against Defendant Liane Lopez relating to her reports to the prison administration regarding Hinzo's medical care; and (vii) whether the Court should dismiss Hinzo's claims against certain Defendants whom Hinzo has not yet provided a name and/or address for service of process. The Court will dismiss some of Hinzo's claims. Because the Court does not have sufficient information based on the contents of Hinzo's pleadings to determine whether any of his claims are time-barred, the Court will not dismiss any of his claims at this time as time-barred. The Court will require that Hinzo respond to this Memorandum Opinion and Order within thirty days to provide the Court with sufficient evidence to support a tolling argument based on the filing of his grievances. Because the State of New Mexico Department of Corrections ("NMDC") is not a suable person under 42 U.S.C. § 1983, the Court will dismiss Hinzo's 42 U.S.C. § 1983 against it. Hinzo has provided sufficient factual allegations to support a claim for a violation of the Eighth Amendment to the United States Constitution relating to the transport van incident against Correctional Medical Services but not against Williams. Because his allegations do not support a plausible claim for an Eighth Amendment violation, the Court will dismiss Hinzo's claims against Tapia related to the slip-and-fall on prison steps. The Court will dismiss Hinzo's 42 U.S.C. § 1983 claims against Williams, Tapia, Jaramillo, Gallegos, and Roark for failing to grant relief on his grievances and/or failing to

-2-

intervene to correct any alleged constitutional violations.  Because Hinzo has included sufficient factual allegations to support a claim for an Eighth Amendment violation against Lopez, the Court will not dismiss his 42 U.S.C. § 1983 claims against her.  The Court will allow Hinzo thirty days to provide addresses for serving process on Defendants Dr. William Mizell and Dr. Debra Clyde, and to identify names and addresses of Defendant Dr. Tony LNU, Defendant Dr. John Doe (C.N.M.C.F.), Defendant Dr. John Doe (W.N.M.C.F.), and Defendant Correctional Officer John (Primo) Doe for serving process.

## PROCEDURAL BACKGROUND

Hinzo filed his original complaint in state court on December 31, 2009.  See Complaint (Tort), filed May 26, 2010 (Doc. 1-1)("Original Complaint").  The Defendants removed the case to this Court on May 26, 2010.  See Notice of Removal at 1-2, filed May 26, 2010 (Doc. 1).  Hinzo subsequently filed first and second amended complaints.  See Plaintiff's First Amended Complaint, filed September 1, 2010 (Doc. 22); Plaintiffs [sic] Second Amended Complaint, filed September 22, 2010 (Doc. 25).  On December 14, 2010, the Court directed Hinzo to submit a third amended complaint with specific, precise allegations, including the time frame for which he is suing.  See Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition at 1-4, filed December 14, 2010 (Doc. 29).  The Third Amended Complaint names eighteen Defendants and, in spite of the Court's directive, runs to twenty-six single-spaced pages, describing in great detail all the events from 2004 to 2010 that Hinzo alleged in his earlier pleadings.  In a subsequent order, the Court allowed Hinzo to join G.E.O. as an additional Defendant.  See Memorandum Opinion and Order at 1-2, filed September 23, 2011 (Doc. 48).

Hinzo's Third Amended Complaint comprises two claims under the Eighth Amendment: (i) one for the Defendants' failure to protect his well-being; and (ii) the other for denial of medical

treatment.  In brief summary, Hinzo alleges in Claim One that he injured his back in 2004 when he

fell out of a bunk bed, and he suffered further injuries in 2009 and 2010.  He also alleges a number

of instances of denial of adequate medical treatment during these years.  In Claim Two he again

describes the injuries alleged in Claim One and makes additional allegations in support of his

medical claim.  For relief, the Third Amended Complaint seeks damages and equitable relief.

### LAW REGARDING 28 U.S.C. § 1915A AND PRO SE PRISONER PLEADINGS

The provisions of § 1915A(a) and (b) require the Court to examine claims in a prisoner

complaint:

> The court shall review . . . a complaint in a civil action in which a prisoner seeks
> redress from a governmental entity or officer or employee of a governmental entity.
> . . . [T]he court shall identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state
> a claim upon which relief may be granted; or . . . seeks monetary relief from a
> defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).  The Court may dismiss a complaint for failure to state a claim if "it is

'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an

opportunity to amend his complaint would be futile."  Hall v. Bellmon, 935 F.2d 1106, 1109 (10th

Cir. 1991)(quoting McKinney v. Okla. Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991)).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In reviewing a pro se plaintiff's complaint, the Court

applies the same legal standards applicable to pleadings that counsel drafts, but liberally construes

the allegations.  See Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

### LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the

> United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").  Rather, 42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Aikins, 487 U.S. 42, 48 (1988).  Broken down differently, a plaintiff

> must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal  judiciary to displace state law through the creation of a body of general federal tort law.  See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)(civil-rights statute).

The Supreme Court of the United States has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009)("Because

vicarious liability is inapplicable to Bivens[1] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 689 (1978).  Further, the United States Court of Appeals for the Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise."   Kiesling v. Troughton, 107 F.3d 880, 1997 WL 111256, at *2 (10th Cir. 1997)(unpublished table decision)(citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). They can be held liable only for their own unconstitutional or illegal policies, and not for the tortious acts of their employees.   Supervisory liability requires a showing that such policies were a "deliberate or conscious choice."   Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)(citations omitted)(internal quotation marks omitted).  Cf. Bd. of Cnty. Comm'rs v. Brown, 502 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, and may have even eliminated, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010).  The language

---

[1]Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395-397 (1971)(authorizing a federal cause of action for damages under certain constitutional provisions when government officials violate those respective constitutional rights).

that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows:

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the

Constitution." 129 S.Ct. at 1948. The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude
> the following basis of § 1983 liability survived it and ultimately resolves this case:
> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates,
> promulgates, implements, or in some other way possesses responsibility for the
> continued operation of a policy the enforcement (by the defendant-supervisor or her
> subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the
> deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199. The Tenth Circuit noted, however, that "Iqbal may very

well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in

ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It

concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983

causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More

specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the

unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express

or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson,

614 F.3d at 1200-01 (second omission in original). The specific example that the Tenth Circuit gave

to illustrate this principle was Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to

hold a mayor, police commissioner, and other city officials liable under 42 U.S.C. § 1983 for

constitutional violations committed by unnamed individual police officers. See Dodds v.

Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit noted

that the Supreme Court in that case found a sufficient link between the police misconduct and the

city officials' conduct, because there was a deliberate plan by some of the named defendants to

-7-

"crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

Liability can extend to a municipality for failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons. Barney v. Pulsipher, 143 F.3d at 1309 & n.8. "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable. Barney v. Pulsipher, 143 F.3d at 1307.

> In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Barney v. Pulsipher, 143 F.3d at 1307-08. Accord Williams ex rel. Hart v. Paint Valley Local Sch. Dist., 400 F.3d 360, 369 (6th Cir. 2005)("The evidence must show that the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to Doe's constitutional rights." (emphasis omitted)). Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations." Barney v. Pulsipher, 143 F.3d at 1308.

## LAW REGARDING THE EIGHTH AMENDMENT

The Supreme Court has held that "a prison official's 'deliberate indifference' to a substantial risk of serious harm" implicates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994). An official violates the Eighth Amendment when two elements are met: (i) the official causes an injury that, objectively, is "sufficiently serious," i.e., an injury that equates to the "denial

of the minimal civilized measure of life's necessities"; and (ii) the official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. at 834 (internal quotation marks omitted). The second condition represents the functional application of the deliberate indifference standard. See Smith v. Cummings, 445 F.3d 1254, 1258-59 (10th Cir. 2006)("To establish a cognizable Eight Amendment claim for failure to protect [an inmate from harm], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." (quoting Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003)).

Analyzing whether the plaintiff has satisfied the first element, the objective element, "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused." Helling v. McKinney, 509 U.S. 25, 36 (1993). Courts should also consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. at 36 (emphasis in original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." Helling v. McKinney, 509 U.S. at 36. On the issue of what qualifies as a serious medical problem, it is unnecessary to show that a plaintiff is presently suffering from serious medical problems if the conditions of confinement are certainly or very likely to cause serious injury. See Helling v. McKinney, 509 U.S. at 33. Additionally, it may be in some cases appropriate to look at several conditions of confinement to determine whether they establish an Eighth Amendment violation when combined, if each alone would not do so. See Wilson v. Seiter, 501 U.S. 294, 304 (1991). Courts may only consider conditions of confinement in combination, however, when "they have a mutually enforcing effect that produces the deprivation of a single,

identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. at 304. Thus, courts should normally consider each condition of confinement separately. Wilson v. Seiter, 501 U.S. at 304-05.

The second element regarding the government official's state of mind is a subjective inquiry. See Wilson v. Seiter, 501 U.S. at 298. Courts apply this subjective inquiry whether the allegations are that a "short-term" or "one-time" violation occurred, or that "continuing" or "systemic" violations occurred. Wilson v. Seiter, 501 U.S. at 299. The Supreme Court has stated: "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Farmer v. Brennan, 511 U.S. at 836. The Supreme Court provided the following test for determining when this subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. at 837. For the purpose of Eighth Amendment analysis, the Tenth Circuit has equated deliberate indifference with recklessness. See Belcher v. United States, 216 F.App'x 821, 823-24 (10th Cir. 2007)(unpublished)(quoting Smith v. Cummings, 445 F.3d at 1258).

In Graham v. Connor, the Supreme Court addressed whether a plaintiff could assert both Eighth Amendment violations and substantive due-process violations in the same suit against government officials alleging that they engaged in physically abusive conduct. See Graham v. Connor, 490 U.S. at 394-95. It held that, when a specific constitutional amendment provides "an explicit textual source of constitutional protection against this sort of physically intrusive

governmental conduct," courts should analyze all constitutional claims under that amendment's standards rather than under "the more generalized notion of 'substantive due process.'" Graham v. Connor, 490 U.S. at 395.  The Supreme Court gave as an example for this principle "the Eighth Amendment's ban on cruel and unusual punishments," because it is one of the "two primary sources of constitutional protection against physically abusive governmental conduct." Graham v. Connor, 490 U.S. at 395.  The Supreme Court has later clarified that this holding in Graham v. Connor "simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  To illustrate this point, the Supreme Court has recognized that, if a search or seizure did not occur, the Fourth Amendment does not cover the situation, and the plaintiff may proceed on a substantive due-process theory.  See Cnty. of Sacramento v. Lewis, 523 U.S. at 842-844 ("The Fourth Amendment covers only 'searches and seizures,' neither of which took place here. . . . Graham's more-specific-provision rule is therefore no bar to respondents' suit.").

In Riddle v. Mondragon, 83 F.3d 1197 (10th Cir. 1996), the Tenth Circuit addressed a case where the plaintiff asserted claims that they were "denied necessary medical care [in prison] in violation of their rights under the Eighth and Fourteenth Amendments." 83 F.3d at 1202.  In determining whether to apply Eighth Amendment standards or substantive due-process standards when reviewing the plaintiffs' claims in Riddle v. Mondragon, the Tenth Circuit noted that, "where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process." 83 F.3d at 1202 (citing Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990).  Thus, the Tenth Circuit reviewed the plaintiffs' claims for denial of

medical care in prison under the Eighth Amendment and did not consider the plaintiffs' substantive due-process theory.  See Riddle v. Mondragon, 83 F.3d at 1202 ("Accordingly, we will review plaintiffs' claims under the Eighth Amendment as made applicable to the states through the Fourteenth Amendment.").

## ANALYSIS

The Court will dismiss some of Hinzo's claims.  Because the Court does not have sufficient information based on the contents of Hinzo's pleadings to determine whether any of his claims are time-barred, the Court will not dismiss any of his claims at this time as time-barred.  The Court will require that Hinzo respond to this Memorandum Opinion and Order within thirty days to provide the Court with sufficient evidence to support a tolling argument based on the filing of his grievances. Because the NMDC is not a suable person under 42 U.S.C. § 1983, the Court will dismiss Hinzo's 42 U.S.C. § 1983 against it.  Hinzo has provided sufficient factual allegations to support a claim for a violation of the Eighth Amendment relating to the transport van incident against Correctional Medical Services but not against Williams.  Because his allegations do not support a plausible claim for an Eighth Amendment violation, the Court will dismiss Hinzo's claims against Tapia related to the slip-and-fall on prison steps.  The Court will dismiss Hinzo's 42 U.S.C. § 1983 claims against Williams, Tapia, Jaramillo, Gallegos, and Roark for failing to grant relief on his grievances and/or failing to intervene to correct any alleged constitutional violations.  Because Hinzo has included sufficient factual allegations to support a claim for an Eighth Amendment violation against Lopez, the Court will not dismiss his 42 U.S.C. § 1983 claims against her.  The Court will allow Hinzo thirty days to provide addresses for serving process on Dr. Mizell and Dr. Clyde, and to identify names and addresses of Dr. Tony LNU, Dr. John Doe (C.N.M.C.F.), Dr. John Doe (W.N.M.C.F.), and Correctional Officer John (Primo) Doe for serving process.

-12-

I.      **THE COURT WILL NOT DISMISS AT THIS TIME ANY OF HINZO'S CLAIMS ON STATUTE OF LIMITATIONS GROUNDS.**

Hinzo has alleged that he suffered a variety of injuries from 2004 onward.  He alleges that in 2004 he fell from his bunk bed and injured his back, because of an improperly constructed bunk bed that lacked an adequate mechanism to climb up to the top bunk.  See Third Amended Complaint ¶ 4, at 6.  Many of his claims also revolve around his subsequent denial of medical care from the time of the injury in 2004 and onward.  Hinzo filed his Original Complaint in state court on December 31, 2009.  See Doc. 1-1.

"The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose . . . ."  McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011).  The period of limitations on personal injury actions in New Mexico is three years.  See N.M.S.A. 1978, § 37-1-8.  "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action."  See Johnson v. Johnson Cnty. Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991)(internal quotation marks omitted).

In his Motion by Plaintiff Pro Se to Respond to Judges [sic] Order that responded to an earlier order which he filed on October 25, 2011, he argues that the period of limitations has been tolled for his 2004 injury claim.  See Doc. 49, at 1-2.  The Tenth Circuit has noted: "[I]n a § 1983 suit, state tolling rules, not federal ones, apply."  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).  See Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (10th Cir. 2009)(requiring "notice and an opportunity to be heard on the issue" of tolling).  As grounds for his tolling argument, Hinzo alleges that the Defendants were aware of the unsafe conditions that led to his 2004 injury, and that, afterwards, medical staff delayed diagnosis and treatment of the injury.

These allegations are no different than the bases of Hinzo's claims and do not support a tolling argument.  In New Mexico, the limitations period applicable to a prisoner's claim may be tolled in either of two ways.  See Roberts v. Barreras, 484 F.3d at 1241.  First, equitable tolling is available where circumstances beyond the prisoner's control prevent filing of the claim.  See Roberts v. Barreras, 484 F.3d at 1241 (citing Ocana v. Am. Furniture Co., 135 N.M. 539, 547, 91 P.3d 58, 66 (2004)).  Hinzo makes no allegation that, e.g., official interference prevented him from filing his claim.

Second, statutory tolling extends the limitations period where a prisoner attempts to exhaust mandatory administrative remedies.  See N.M.S.A. 1978, § 37-1-12; Roberts v. Barreras, 484 F.3d at 1242.  This question is a more difficult one based on the lack of details in the Third Amended Complaint regarding when exactly some of these injuries occurred, other than the general year in which they occurred, and the lack of details regarding the grievance process within the various prisons in which Hinzo was incarcerated.  Hinzo alleges that he suffered a variety of injuries for a period spanning several years.  It is not clear on which dates Hinzo filed his grievances and at what times he ultimately exhausted the grievance process with respect to each injury.  He has made allegations throughout his pleadings that he has exhausted the applicable administrative remedies.  One of his exhibits indicates that he has filed grievances at various points in time, but there are few details in that exhibit that reveal to what injuries and complaints those grievances relate.  See Grievance History at 4, filed May 10, 2011 (Doc. 42).  The Court cannot conclude the precise period of time during which his claims have been tolled, if at all.  As the Tenth Circuit has stated:

> [A] district court may not sua sponte dismiss a prisoner's § 1983 action on the basis of the statute of limitations unless it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue.

Vasquez Arroyo v. Starks, 589 F.3d at 1097.  "When a district court believes it is likely that a pro

se prisoner's § 1983 complaint is dismissible on the basis of the state's statute of limitations, the

court may issue a show cause order giving the plaintiff an opportunity to explain why the statute of

limitations should be tolled."  Vasquez Arroyo v. Starks, 589 F.3d at 1097.  On the current record,

the Court does not have grounds to dismiss these claims as time-barred by the applicable statute of

limitations.  The Court has not yet given Hinzo a full opportunity to be heard on the tolling of the

statute of limitations.

        The Court will require that Hinzo respond to this Memorandum Opinion and Order within

thirty days to provide the Court with sufficient evidence to support a tolling argument based on the

filing of his grievances.  His response should relate to any injuries he suffered before December 31,

2006, including the injury relating to the allegedly deficient bunk bed design and subsequent denials

of medical care or improper treatment.  He may respond by describing in detail in a sworn affidavit

the times he filed grievances, the specific injuries or claims to which those grievances relate, and

the time at which he fully exhausted the grievance process in that his grievance was denied and he

had no further ability to appeal that decision.  Alternatively, he may respond with the specific

grievance filings and related documentation regarding the denial of his grievances.  He may also

provide whatever evidence and arguments he has that equitable tolling should apply to his claims.

## II.     THE COURT WILL DISMISS SOME OF THE CLAIMS RELATED TO HINZO'S INJURIES FROM THE INCIDENT WHERE HE WAS TRANSPORTED BY VAN FOLLOWING HIS 2009 SURGERY.

        In Claim One's seven pages of supporting allegations, Hinzo also complains of injuries that

he sustained in 2009 and 2010.  He alleges that the 2009 injury occurred as staff were returning him

to prison in a transport van after he underwent surgery at a hospital.  Hinzo contends that the 2009

injury occurred when the NMDC and Correctional Medical Services ignored the hospital staff's

recommendation to transport him in an ambulance instead of a van.  He asserts that this decision resulted from money-saving motives and deliberate indifference to his well-being.  He names Correctional Officer John (Primo) Doe as the driver who picked him up at the hospital in a corrections transport van.  The driver drove recklessly and left the roadway, causing Hinzo to bounce around, reinjuring the spinal disc that surgery had recently repaired.

As an initial matter, the NMDC is not a suable person within the meaning of 42 U.S.C. § 1983.  Hinzo alleges that this Defendant is an "entity of the government for the state of New Mexico."  Third Amended Complaint at 1.  The Supreme Court has recognized that "a State is not a 'person' within the meaning of § 1983."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989).  A State in this context includes "arms of the State."  Will v. Mich. Dep't of State Police, 491 U.S. at 70.  Municipalities, on the other hand, are suable persons within the meaning of 42 U.S.C. § 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. at 70.[2]  There are no allegations in Hinzo's Third Amended Complaint that the NMDC is a municipality or otherwise a suable person under 42 U.S.C. § 1983.  Notably, Hinzo could sue high-level officials within the NMDC under 42

_____

[2]The Supreme Court has recognized that sovereign immunity under the Eleventh Amendment to the United States Constitution is a separate issue from the interpretation of the term person under 42 U.S.C. § 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. at 67-68.  Sovereign immunity under the Eleventh Amendment may be waived when a defendant who has immunity removes the case to federal court.  See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998)("Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense.").  This case was removed to federal court.  See Notice of Removal of Action by Defendants State of Mew Mexico Department of Corrections Joe Williams, George Tapia and Correctional Medical Services, Inc. Pursuant to 28 U.S.C. Sections 1331, 1441, 1443 and 1446, filed May 26, 2010 (Doc. 1).  Removal would not waive the issue of this statutory definition of person under 42 U.S.C. § 1983, as illustrated by the Supreme Court's recognition that, even in state court where Eleventh Amendment immunity does not apply, a state is still not a person within the meaning of 42 U.S.C. § 1983.  See Howlett v. Rose, 496 U.S. 356, 353 (1990)("Since this Court has construed the word 'person' in § 1983 to exclude States, neither a federal court or a state court may entertain a § 1983 action against such a defendant.").

U.S.C. § 1983, rather than the entity itself, if he sued them in their official capacity and sought prospective relief.  See Will v. Mich. Dep't of State Police, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").  Thus, because the NMDC is not a suable person within the meaning of 42 U.S.C. § 1983, the Court will dismiss all Hinzo's 42 U.S.C. § 1983 claims against this Defendant.

Hinzo has made plausible allegations that Correctional Medical Services acted with deliberate indifference regarding the decision to transport Hinzo by van.  Hinzo does not allege that Correctional Medical Services is a municipality, but rather that it "is contracted by the" NMDC "to provide all medical services to all of the . . . prison facilities from July 2007 to the present day." Third Amended Complaint ¶ 6, at 2.  He asserts: "Because they are contracted by the State of N.M., this defendant and all of their employees all acted under color of state law, and in their official capacity."  Third Amended Complaint ¶ 6, at 2.  The Court will assume without deciding that Hinzo can assert an Eighth Amendment violation against Correctional Medical Services, which appears to be a private entity, under 42 U.S.C. § 1983.  The nature of Correctional Medical Services' role with the prison system is such that the Court cannot conclude as a matter of law, based on the allegations in the pleadings, whether state action occurred for Fourteenth Amendment purposes.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)(recognizing that "joint participation with state officials is sufficient to characterize that person as a 'state actor' for purposes of the Fourteenth Amendment").[3]  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within

---

[3]As the United States Court of Appeals for the Second Circuit has described, determining whether a private party's conduct constitutes state action is "one of the more slippery and troublesome areas of civil rights litigation."  Int'l Soc'y for Krishna Consciousness v. Air Can., 727 F.2d 253, 255 (2d Cir. 1984).  "Only by sifting facts and weighing circumstances can the

the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40

F.3d 337, 340 (10th Cir. 1994).  Normally, considering matters outside the complaint results in an

improper conversion of the motion to dismiss into a motion for summary judgment.  <u>See</u> <u>Weise v.</u>

<u>Casper</u>, 507 F.3d 1260, 1267 (2007).   Because Corrections Medical Services is not a municipality,

he would have to proceed on a supervisory liability theory to hold this entity liable.  <u>See</u> <u>Ashcroft</u>

<u>v. Iqbal</u>, 129 S.Ct. at 1949.  To hold a person liable under 42 U.S.C. § 1983 under a supervisory

liability theory, there must be "an 'affirmative' link . . . between the unconstitutional acts by their

subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their

authorization or approval of such misconduct."  <u>Dodds v. Richardson</u>, 614 F.3d at 1200-01 (second

omission in original).   A person can likewise be liable for their own conduct that violates a

defendant's constitutional rights.  <u>See</u> <u>Dodds v. Richardson</u>, 614 F.3d at 1195.

      Here, Hinzo has stated a plausible claim that Correctional Medical Services acted with

deliberate indifference.  An official violates the Eighth Amendment when two elements are met:

(i) the official causes an injury that, objectively, is "sufficiently serious," <u>i.e.</u>, an injury that equates

to the "denial of the minimal civilized measure of life's necessities"; and (ii) the official has a

"sufficiently culpable state of mind."  <u>Farmer v. Brennan</u>, 511 U.S. at 834 (internal quotation marks

omitted).  Analyzing whether the plaintiff has satisfied the first element, the objective element,

"requires more than a scientific and statistical inquiry into the seriousness of the potential harm and

the likelihood that such an injury to health will actually be caused."  <u>Helling v. McKinney</u>, 509 U.S.

25, 36 (1993).  Courts should also consider "whether society considers the risk that the prisoner

_____

nonobvious involvement of the State in private conduct be attributed its true significance."  <u>Burton</u>
<u>v. Wilmington Parking Auth.</u>, 365 U.S. 715, 722 (1961).  Such factually intensive questions do not
lend themselves to disposition under rule 12(b)(6).

complains of to be so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk." <u>Helling v. McKinney</u>, 509 U.S. at 36 (emphasis in original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." <u>Helling v. McKinney</u>, 509 U.S. at 36. This inquiry is generally less difficult when there is an alleged injury as opposed to a potential injury that may occur in the future. <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. at 33-34. "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005). Here, Hinzo has alleged that he currently suffers from severe back problems and will suffer permanent back problems from which he will never completely recover. <u>See</u> Third Amended Complaint ¶ 65, at 22. Taking all Hinzo's allegations as true, this injury is sufficiently serious to satisfy the first element of the Eighth Amendment inquiry.

Second, Hinzo's allegations support a plausible inference that Correctional Medical Services engaged in conduct that would satisfy the subjective element. The Supreme Court has provided the following test for determining when this subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer v. Brennan</u>, 511 U.S. at 837. For the purpose of Eighth Amendment analysis, the Tenth Circuit has equated deliberate indifference with recklessness. <u>See</u> <u>Belcher v. United States</u>, 216 F.App'x at 823-24. Hinzo alleges that Correctional Medical Services had knowledge that Hinzo needed back surgery from the back injury he had sustained. <u>See</u> Third Amended Complaint ¶ 30, at 17. He alleges that Correctional Medical Services allowed him to stay in the hospital for only one and a half days following his surgery, even though the surgeon recommended that he stay there

longer.  See Third Amended Complaint ¶ 32, at 17.  He alleges that a doctor at St. Vincent's Hospital called Correctional Medical Services and recommended that, if it was going to take Hinzo out of the hospital early, that it should transport him by ambulance in a position where he was lying down.  See Third Amended Complaint ¶ 33, at 17.  He contends that it disregarded this advice and sent a van to transport him from the hospital.  See Third Amended Complaint ¶ 33, at 17.  He alleges that Correctional Medical Services behaved in this manner to save money.  See Third Amended Complaint ¶¶ 32-33, at 17.  He alleges that he had to sit in the van straight up, and fully shackled, for a one-and-a-half to two-hour drive back to the prison hospital.  See Third Amended Complaint ¶ 33, at 17.  Those allegations support an inference that Correctional Medical Service knew of an excessive risk to inmate health or safety.  See Farmer v. Brennan, 511 U.S. at 837.  Taking all the allegations as true and drawing all reasonable inferences in Hinzo's favor, Correctional Medical Services knew about the potential risks of taking Hinzo out of the hospital early and transporting in some other method than an ambulance, because doctors expressly warned them of that risk.  See Farmer v. Brennan, 511 U.S. at 837.  Drawing all reasonable inferences in Hinzo's favor, it is plausible that this entity drew that inference based on the multiple warnings it received and its decision to disregard those concerns to save money.  See Farmer v. Brennan, 511 U.S. at 837.  Based on their decision to save money rather than to follow the advice from those who had warned them, these allegations support a plausible inference that they disregarded the substantial risk.  See Farmer v. Brennan, 511 U.S. at 837.  Thus, Hinzo has stated a plausible claim that Correctional Medical Services violated his Eighth Amendment rights with respect to this incident.

Hinzo's assertion that Williams is responsible for the 2009 injury, see Third Amended Complaint ¶¶ 11, 13, at 7-8, does not support a 42 U.S.C. § 1983 claim against Williams.  Hinzo alleges that Williams is the Secretary of Corrections for the NMDC.  See Third Amended Complaint

at 1-2.  To articulate a claim under the Eighth Amendment, Hinzo must allege that Williams acted

with "deliberate indifference."  Estelle v. Gamble, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. at

838.  Hinzo makes no allegations that Williams was "aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists" regarding the allegedly unsafe situation with

the van driver and the surgery, or that Williams drew the inference.  Farmer v. Brennan, 511 U.S.

at 837.  The only allegations that relate to Williams are general allegations that certain Defendants

had a duty to provide a safe environment for him and failed to meet that duty in relation to this van

ride and surgery.  See Third Amended Complaint at 7-8.  Hinzo alleges that Williams "being the

secretary of corrections is responsible for writing the policies and procedures, rules and regulations."

Third Amended Complaint ¶ 13, at 8.  Hinzo alleges that Williams was negligent in not "making this

officer" who drove the van "be certified on the proper ways to transport any inmate just like any and

all ambulance drivers are trained and certified."  Third Amended Complaint ¶ 13, at 8.  He further

alleges that "Mr. Williams negligence is the reason why the plaintiff sustained the (2nd) very serious

back injury on April 30, 2009."  Third Amended Complaint ¶ 13, at 8.  Hinzo expressly alleges that

Williams' conduct was negligent as opposed to reckless.  For the purpose of Eighth Amendment

analysis, the Tenth Circuit has equated deliberate indifference with recklessness, meaning that mere

negligence is insufficient to establish an Eighth Amendment violation.  See Belcher v. United States,

216 F.App'x at 823-24.  While theoretically Hinzo could pursue a claim against Williams for failing

to train these drivers in the absence of a pattern or practice of violations, see Connick v. Thompson,

131 S.Ct. at 1360-62, Hinzo's allegations fail because he has alleged that Williams acted in a

negligent manner rather than in a deliberately indifferent manner.  His allegations would also not

likely support a claim that this van incident was the obvious consequence of failing to train the

drivers, as a failure to train without a pattern of practice of violations putting officials on notice will

only "in a narrow range of circumstances" support a claim of deliberate indifference.  Connick v. Thompson, 131 S.Ct. at 1361.  Consequently, the Court will dismiss the claim against Williams related to this surgery incident and the van incident.

**III.   THE COURT WILL DISMISS HINZO'S 42 U.S.C. § 1983 CLAIMS RELATED TO HIS SLIP-AND-FALL THAT OCCURRED IN 2010.**

Hinzo alleges that Tapia had a duty "to provide a safe environment free of injury . . . when the plaintiff slipped and fell onto his back" on January 1, 2010.  Third Amended Complaint ¶ 17, at 9.  Hinzo alleges that the dirt steps on which he slipped "were covered in ice and snow while going into the recreation cage."  Third Amended Complaint ¶ 17, at 9.  He asserts that the steps should not have been covered in ice and snow, because inmates climb down them to go into the recreation cage.  Third Amended Complaint ¶ 17, at 9.  He also alleges that the steps were not "real steps made out of cement, they were dug out of dirt" and "are not level."  Third Amended Complaint ¶ 17, at 9.  There are no other allegations regarding this incident.

No relief is available under 42 U.S.C. § 1983 for an Eighth Amendment violation based on these allegations.  While Tapia may have had a duty to provide a safe environment to Hinzo, this conduct does not amount to deliberate indifference.  "Simply put, [a] slip and fall, without more, does not amount to cruel and unusual punishment. . . . Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles."  Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004)(alterations in original)(internal quotation marks omitted).  "Federal courts from other circuits have . . . consistently held that slippery prison floors do not violate the Eighth Amendment."  Reynolds v. Powell, 370 F.3d at 1031.  See also Daniels v. Williams, 474 U.S. 327, 328-33 (1986)(ruling that slip-and-fall claims sound in tort and not constitutional law).  Given that Hinzo has made no allegations that distinguish this incident from a typical slip-and-fall claim, the

Court will dismiss this his Eighth Amendment claim against Tapia.

## IV.    THE COURT WILL DISMISS HINZO'S 42 U.S.C. § 1983 CLAIM AGAINST WILLIAMS THAT INVOLVES AN ALLEGED EIGHTH AMENDMENT VIOLATIONS FOR AN IMPROPER HIRING DECISION.

Hinzo has alleged that Williams was responsible for hiring several Defendants and for placing Tapia as warden of one of the prison facilities.   See Third Amended Complaint ¶ 15, at 9.

To hold a government official liable under a theory of supervisory liability, the Tenth Circuit has recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . . -- express or otherwise -- showing their authorization or approval of such misconduct."   Dodds v. Richardson, 614 F.3d at 1200-01 (second omission in original).  The Supreme Court has applied particularly strict causation standards in cases where the plaintiff alleges an Eighth Amendment violation on the basis of a decision to hire an employee who ultimately committed the constitutional violation.  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 408-15 (1997).  Specifically, the Supreme Court has held in this context:

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 412.  The Supreme Court distinguished failure-to-train cases from cases involving inadequate screening of a job applicant when it stated:

> A lack of scrutiny may increase the likelihood that an unfit officer will be hired, and that the unfit officer will, when placed in a particular position to affect the rights of citizens, act improperly.  But that is only a generalized showing of risk.  The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation.  After all, a full screening of an applicant's background might reveal no cause for concern at all; if so, a hiring official who failed to scrutinize the applicant's background cannot be said to have consciously disregarded an obvious risk that the

officer would subsequently inflict a particular constitutional injury.

Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 410-11.  Notably, Board of County Commissioners v. Brown involved a claim regarding a single improper hiring decision.  See 520 U.S. at 402. Nevertheless, even in a case where there may be a pattern or practice of hiring unfit employees, deliberate indifference standards still apply.  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 412 n.1.

Here, there are no allegations that Tapia had a background which would indicate that he was predisposed to commit constitutional violations.  The remaining allegations do not support a plausible inference that Williams was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists."  Farmer v. Brennan, 511 U.S. at 837.  Furthermore, there are no allegations that Williams ever drew an inference that there was a substantial risk of serious harm based on his knowledge of Tapia's background.  See Farmer v. Brennan, 511 U.S. at 837. Based on this lack of allegations, Hinzo has not established a plausible inference that there is a sufficient causal relationship between Williams' decision to hire Tapia and the future constitutional violations that Tapia allegedly committed.  Consequently, the Court will dismiss the 42 U.S.C. § 1983 claim against Williams asserted on the basis that he committed Eighth Amendment violations in making this hiring decision.

## V.   THE COURT WILL DISMISS HINZO'S 42 U.S.C. § 1983 CLAIMS AGAINST THE PRISON OFFICIALS WHO DENIED HIS MEDICAL GRIEVANCES AND DID NOT INTERVENE IN HIS MEDICAL TREATMENT.

Hinzo alleges that the following Defendants failed to grant relief on his grievances relating to his allegedly inadequate medical care or otherwise intervene to correct the alleged violations: (i) Williams; (ii) Tapia; (iii) Jaramillo; (iv) Gallegos; and (v) Roark.  See, e.g., Third Amended Complaint ¶¶ 8, 16, 21, 24, 28, at 7, 9-12 (Claim One); id. ¶¶ 56-57, at 20 (Claim Two).  The Tenth

Circuit has recognized that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).  When an inmate's "only allegations involving [particular] defendants relate to the denial of his grievances, he has not adequately alleged any factual basis to support an 'affirmative link' between these defendants and any alleged constitutional violation."  Gallagher v. Shelton, 587 F.3d at 1069.  Furthermore, administrative officials "can[not] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Beyond his allegations that these Defendants should not have denied his grievances or should have taken additional action based on the filing of his grievance, Hinzo provides no factual allegations that link these Defendants to any other alleged constitutional violations regarding his medical care or other cognizable injuries.  The Tenth Circuit has recognized that allegations beyond denial of a grievance are necessary to support an affirmative link between a defendant and an alleged constitutional violation.  Gallagher v. Shelton, 587 F.3d at 1069.  Prison officials likewise generally have no obligation to respond directly to a prisoner's medical complaints when that prisoner is already receiving treatment.  Durmer v. O'Carroll, 991 F.2d at 69.  Hinzo's Third Amended Complaint lacks such allegations in relation to denial of these grievances and failure to directly intervene in his medical treatment.  Consequently, the Court will dismiss Hinzo's 42 U.S.C. § 1983 claims against Williams, Tapia, Jaramillo, Gallegos, and Roark that assert that their denial of his grievances, and their failure to directly intervene in his medical treatment, constituted an Eighth Amendment violations.

-25-

**VI.    HINZO HAS STATED A PLAUSIBLE CLAIM OF DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT AGAINST LOPEZ.**

In the ten single-spaced pages of Claim Two, Hinzo alleges numerous instances of both inadequate medical treatment and outright denial of treatment between 2004 and 2010.  In brief summary, Hinzo alleges that after each injury the Defendants ignored his complaints, provided inadequate pain medication, and denied or delayed needed surgery.  Hinzo alleges that Defendant Liane Lopez, a registered nurse, reported to her supervisors on numerous occasions, in response to investigations of Hinzo's grievances, that medical staff provided adequate treatment to Hinzo.  See Third Amended Complaint ¶ 22, at 10.  He alleges that she made this assertion, because she knew that no one in the prison administration would know whether or not the doctors had provided adequate care.  Taking into account Hinzo's allegations that he, on repeated occasions, made his dissatisfaction with his medical treatment known to the medical staff, these allegations, when drawing all reasonable inferences in favor of Hinzo, support a plausible inference that Lopez acted with deliberate indifference.

As the Court has discussed previously, the nature of Hinzo's alleged injuries are such that they satisfy the objective element of a deliberate indifference claim.  The Supreme Court provided the following test for determining when the subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. at 837.  Here, Hinzo has made allegations that support an inference that Lopez: (i) knew of and disregarded an excessive risk to inmate health or safety; (ii) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and

(iii) drew that inference.  See Farmer v. Brennan, 511 U.S. at 837.  Drawing all reasonable inferences in Hinzo's favor, Lopez would have known about Hinzo's medical history and history of complaints.  See Lemay v. Winchester, 382 F.App'x 698, 702-03 (10th Cir. 2010)(unpublished)(recognizing that circumstantial evidence can support a showing that the defendant is aware of particular facts about an inmate's medical condition and history).  Additionally, as a registered nurse, it is a reasonable inference that she would have understood the potential consequences to Hinzo if the medical staff inappropriately responded to Hinzo's reported symptoms, which Hinzo has alleged resulted in a variety of medical problems for him.  Hinzo has also alleged that she knew that he was receiving inadequate medical care, but reported to the prison administration that he was receiving adequate care, because she knew that prison officials had no way of verifying what the medical staff told them.  Those allegations support an inference that she was aware of a substantial risk and disregarded that risk.  Taking all those allegations together, Hinzo has provided sufficient allegations to support a plausible inference that Lopez acted with deliberate indifference.

## VII.   THE COURT WILL PROVIDE HINZO WITH THIRTY DAYS TO PROVIDE FULL NAMES AND/OR ADDRESSES FOR THE DEFENDANTS WHO HAVE NOT YET APPEARED, OR ELSE THE COURT MAY DISMISS HIS CLAIMS AGAINST THESE DEFENDANTS.

A number of Defendants have filed answers, but the Third Amended Complaint does not provide names or addresses for serving other Defendants.  See Third Amended Complaint at 1-4. The Court will allow Hinzo thirty days to provide addresses for serving process on the following Defendants: (i) Dr. Mizell; and (ii) Dr. Clyde.  The Court will allow Hinzo thirty days to provide names and addresses of the following Defendants for serving process: (i) Dr. Tony LNU; (ii) Dr. John Doe (C.N.M.C.F.); (iii) Dr. John Doe (W.N.M.C.F.); and (iv) Correctional Officer John

(Primo) Doe.  Failure to provide this information may result in dismissal of his claims against these Defendants.

**IT IS ORDERED** that: (i) Plaintiff Justin James Hinzo must respond within thirty days to this Memorandum Opinion and Order with evidence demonstrating that his claims that arose before December 31, 2006 are tolled based on his grievance filings; (ii) the Court will dismiss Hinzo's 42 U.S.C. § 1983 claims against Defendant State of New Mexico Department of Corrections; (iii) the Court will dismiss Hinzo's 42 U.S.C. § 1983 claim against Defendant Joe Williams relating to the injuries Hinzo received during the 2009 incident where he was transported by van following his surgery; (iv) the Court will dismiss Hinzo's 42 U.S.C. § 1983 claim against Defendant George Tapia related to his slip-and-fall on the prison steps on January 1, 2010; (v) the Court will dismiss Hinzo's 42 U.S.C. § 1983 claims against Williams, Tapia, Defendants Lawrance Jaramillo, Wayne Gallegos, and Jerry Roark for failing to grant relief on his grievances relating to his allegedly inadequate medical care or for failing to otherwise intervene to correct the alleged constitutional violations for improper medical care; and (vi) under the order of reference, United States Magistrate Judge Garza may (a) order a new deadline for a Martinez[4] report at her discretion, and (b) allow Hinzo thirty days to provide addresses for serving process on Defendants Dr. William Mizell and Dr. Debra Clyde, and to identify names and addresses of Defendant Dr. Tony LNU, Defendant Dr. John Doe (C.N.M.C.F.), Defendant Dr. John Doe (W.N.M.C.F.), and Defendant Correctional Officer John (Primo) Doe for serving process.

---

[4]See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).  "When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison officials (referred to as a Martinez report) is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Justin James Hinzo
Penitentiary of New Mexico
Santa Fe, New Mexico

    *Plaintiff pro se*

Edward Shepherd
Allen, Shepherd, Lewise, Syra & Chapman, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants State of New Mexico*
      *Department of Corrections, George Tapia,*
      *Wexford Medical*

Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants State of New Mexico*
      *Department of Corrections, George Tapia,*
      *Correctional Medical Services, Inc.*