IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUSTIN JAMES HINZO,

      Plaintiff,

v.                                                                       No. CIV 10-0506 JB/CG

STATE OF N.M. DEPT. OF CORRECTIONS,
JOE WILLIAMS, GEORGE TAPIA, WEXFORD,
CORRECTIONAL MEDICAL SERVICES, DR. FNU ARNOLD,
DR. WILLIAM MIZELL, DR. TONY LNU, DR. DEBRA CLYDE,
DR. JOHN STOVER, DR. JOHN DOE (L.C.C.F.),
DR. JOHN DOE (C.N.M.C.F.), DR. JOHN DOE (W.N.M.C.F.),
CORRECTIONAL OFFICER DAVID GONZALES,
WAYNE GALLEGOS, R.N. LIANE LOPEZ,
DEPUTY WARDEN JERRY ROARK,
LAWRENCE JARAMILLO WARDEN P.N.M., G.E.O.,

      Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE
JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 4, 2013 (Doc. 135)("PFRD"); (ii) the Plaintiff's Objections by Plaintiff Pro Se to the Honorable Magistrate Judge Carmen Garza's Proposed Findings and Recommended Disposition, filed March 4, 2013 (Doc. 139)("Objections"); and (iii) the Plaintiff's Motion by the Plaintiff Pro Se Requesting To Enter Evidence Into Objections That Was Not Available At The Time Objections Were Filed Feb. 26, 13, filed March 12, 2013 (Doc. 140)("Motion"). The Honorable Carmen E. Garza, United States Magistrate Judge, granted Plaintiff Justin James Hinzo an extension of time in which to file his objections, see Order Granting Extension of Time, filed February 21, 2013 (Doc. 138), and he timely filed his Objections on March 4, 2013. In the PFRD, the Judge Garza recommends that

the Court grant summary judgment in favor of Defendants and that the Court dismiss Hinzo's claims. Based on the Court's de novo determination of the issues that Hinzo raises in his Objections and after reviewing de novo the relevant law, the Court will overrule Hinzo's Objections, adopt Judge Garza's PFRD, and dismiss the Motion as moot.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Finally, when resolving objections to a magistrate judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."

United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059 (citations omitted).  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).

In One Parcel, the Tenth Circuit, in accord with other courts of appeals, expanded the waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.

The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting

-4-

Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed findings and recommendation, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b); citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a de novo review of a party's timely, specific objections to the magistrate's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on

conflicting testimony or evidence . . . .  the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009.  On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).  A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."  Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000).  "[T]he district court is presumed to know that de novo review is required. . . . Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766.  The Tenth Circuit has explained that brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because a district court may place whatever reliance it chooses on a magistrate's proposed findings and recommendations, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1), as "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted). See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the magistrate judge's proposed findings and recommended disposition, the Court has, as a matter of course in the past and in the interests of justice, reviewed the magistrate judge's recommendations. In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. Feb. 27, 2013)(Browning, J.), the plaintiff failed to respond to the magistrate judge's proposed findings and recommended disposition and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review. The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4. The Court, thus, does not determine independently what

it would do if the issues had come before the Court first, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. Feb. 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

## RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32.

### 1. Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction. Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.)).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

**2.    District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental

jurisdiction. 383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

>   (1) the claim raises a novel or complex issue of State law,
>
>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *8

(D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").

## ANALYSIS

Hinzo asserts that the Court should not dismiss his case against Defendant G.E.O., because the statute of limitations for a 42 U.S.C. § 1983 claim was tolled, but he fails to provide support for the Court to find this equitable tolling.  Hinzo also objects to Judge Garza's recommendation that the Court dismiss his claims against Defendant David Gonzales for his failure to exhaust administrative remedies.  The Court will overrule this objection, because the Court determines that Judge Garza's recommendation is proper as there is no evidence Hinzo filed an administrative grievance concerning Gonzales.  The Court will also overrule Hinzo's objection to Judge Garza's recommendations to dismiss the claims against Defendants Wexford Medical Services, Correctional Medical Services, Inc., and their employees, because Hinzo's allegations and his assertions in his Objections fail to allege that these Defendants' conduct rises to the level of a constitutional violation.  Hinzo finally objects to Judge Garza's recommendation that the Court dismiss Defendants New Mexico Corrections Department ("NMCD") and its employees.  Because all of Hinzo's federal claims against NMCD and its employees were dismissed in the Court's Memorandum Opinion and Order, filed February 22, 2012 (Doc. 59), and because Judge Garza properly recommends the Court decline to exercise supplemental jurisdiction over these claims, the Court will overrule Hinzo's final objection. Accordingly, because no federal claims remain, the Court will dismiss the case.

I.      **THE COURT WILL OVERRULE HINZO'S OBJECTIONS.**

In his Objections, Hinzo repeats the arguments, allegations, and facts that appear in his previous filings. The PFRD contains an extensive recitation of the facts and a thorough analysis of Hinzo's claims in light of his medical records and the relevant law. Although Hinzo's Objections do not provide particular grounds on which to reject the Judge Garza's recommendation, the Court addresses them below.

   A.   **THE COURT WILL OVERRULE HINZO'S OBJECTION TO THE STATUTE OF LIMITATIONS' APPLICATION.**

Hinzo's first objection is to Judge Garza's recommendation that the Court dismiss his claims against G.E.O. for failing to provide a safe environment as time-barred. See Objections at 2-8. As grounds for tolling the statute of limitations, Hinzo argues that limited access to legal materials has prejudiced him, that he actively sought medical attention for years but that a CT scan[1] did not confirm his injury until June of 2006, and that he filed three grievances between 2004 and 2006. See Objections at 2-8. In the PFRD, Judge Garza explains that equitable tolling is granted only when Hinzo demonstrates "extraordinary circumstances beyond his control" that prevent him from filing his complaint. PFRD at 28 (citing to Ocana v. American Furniture Co., 2004-NMSC-018, ¶ 15, 135 N.M. 539, 91 P.3d 58). The Tenth Circuit has explained that a great deal more that neglect to file a claim is required:

> This circuit's decisions have indicated that the [statute of limitations'] time limits . . . will be tolled only where the circumstances of the case rise to a level of "active deception" sufficient to invoke the powers of equity. Cottrell v. Newspaper Agency Corp., 590 F.2d 836, 838-39 (10th Cir.1979). For instance, equitable tolling may be appropriate where a plaintiff has been "lulled into

---

[1] CT scan, an abbreviation for "computed tomography," also commonly referred to as an X-ray computed tomography or computed axial tomography (CAT scan), is a "medical imaging procedure that utilizes computer-processed X-rays to produce tomographic images or 'slices' of specific areas of the body," which are then used for diagnostic and therapeutic purposes in various medical disciplines. Wikipedia, X-ray computed tomography, http://en.wikipedia.org/wiki/X-ray_computed_tomography (last visited March 28, 2013).

> inaction by her past employer, state or federal agencies, or the courts." Carlile v.
> South Routt School District RE 3-J, 652 F.2d 981, 986 (10th Cir.1981); see
> Gonzalez-Aller Balseyro, 702 F.2d at 859. Likewise, if a plaintiff is "actively
> misled," or "has in some extraordinary way been prevented from asserting his or
> her rights," we will permit tolling of the limitations period. Wilkerson v.
> Siegfried Insurance Agency, Inc. 683 F.2d 344, 348 (10th Cir.1982); see also
> Cottrell, 590 F.2d at 838.

Martinez v. Orr, 738 F.2d 1107, 1110 (10th Cir. 1984). Although in the context of a habeas corpus petition, the Tenth Circuit similarly stated:

> Equitable tolling would be appropriate, for example, when a prisoner is actually
> innocent, Miller v. Marr, 141 F.3d 976, 978 (10th Cir.), cert. denied, 525 U.S. 891
> . . . (1998), when an adversary's conduct - or other uncontrollable circumstances-
> prevents a prisoner from timely filing, or when a prisoner actively pursues judicial
> remedies but files a defective pleading during the statutory period, Irwin v. Dep't
> of Veterans Affairs, 498 U.S. 89, 96 . . . (1990). Simple excusable neglect is not
> sufficient. Id. at 96, 111 S. Ct. 453.

Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). Hinzo's lack of a lawyer, without any assertion that he attempted to obtain a lawyer and an adversary prevented from doing so, and limited access to legal materials are not extraordinary circumstances for the purposes of equitable tolling. See Nicholson v. Higgins, 147 F. App'x 7, 9 (10th Cir. 2005)(unpublished)[2] (holding that inmate's solitary confinement for 82 days, which prevented him from access to law library, did not toll statute of limitations, because "[t]o justify equitable tolling, an inmate must make a specific showing of: (1) lack of access to relevant materials, and (2) the steps taken to

---

[2] Nicholson v. Higgins is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Nicholson v. Higgins has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

'diligently pursue his federal claims.'")(quoting Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)).

Hinzo's alternative argument, that his injury was confirmed in June 2006, does not help provide him relief. A claim under 42 U.S.C. § 1983 accrues when the Hinzo knows or has reason to know of the injury that is the basis of his claim. See Johnson v. Johnson Cnty. Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991). In this case, Hinzo acknowledges that he was in severe pain and "knew something was wrong" following his fall from the bunk-bed sometime in 2004. Objections at 3. Thus, his cause of action accrued at the time of injury in 2004; allowing that the injury occurred on December 31, 2004, the three year statute of limitations ran on December 31, 2007, two years before he filed his claim. Even if the Court found that Hinzo did not know of his injury until the CT scan in June 2006 confirmed it, this date was still three years and six months before he filed his claim. The statute of limitations can be tolled while a prisoner is pursuing administrative remedies. See N.M.S.A. 1978, § 37-1-12. However, Hinzo filed only one grievance related to his injury in 2006, and it was filed in December 2006. See Affidavit of Ralph Casaus at 2-3, filed July 10, 2012 (Doc. 83-14). This does not provide a basis for statutory tolling of the statute of limitations. Hinzo has not provided any basis to grant equitable or statutory tolling of the statute of limitations and his objection is overruled.

**B.      THE COURT WILL OVERRULE HINZO'S OBJECTIONS TO JUDGE GARZA'S RECOMMENDATION TO DISMISS THE CLAIMS AGAINST GONZALES.**

Hinzo's second objection is to Judge Garza's recommendation that the Court dismiss his claim against Gonzales because Hinzo failed to exhaust his administrative remedies. See Objections at 8-11. As Judge Garza explains in the PFRD, Hinzo claims that Gonzales was

deliberately indifferent to his medical condition by driving recklessly while transporting him back to the prison from the hospital after Hinzo's back surgery.  See PFRD at 31-32.

Under the Prison Litigation Reform Act, a prisoner cannot bring a § 1983 action relating to prison conditions without first exhausting his administrative remedies.  See 42 U.S.C. § 1997e(a).  Exhaustion is a mandatory prerequisite to bringing suit.  See Woodford v. Ngo, 548 U.S. 81, 88 (2006).

Hinzo asserts that he exhausted his administrative remedies, but was not able to name Gonzales specifically because he did not know his name.  See Objections at 8-9.  He also argues that he made several requests to discover his name after bringing this cause of action.  See Objections at 8-9.  He contends further that the merits of his claims, citing the medical records to demonstrate that his back was injured a second time.  See Objections at 9-11.  Hinzo filed only two grievances that discuss his back injury and allude to the transportation from the hospital; neither of these grievances mentions the driver of the vehicle.  See Inmate Grievance dated Dec. 28, 2009, filed July 10, 2012 (Doc. 83-18);  Inmate Grievance dated Sept. 18, 2009, filed July 10, 2012 (Doc. 83-19).  The grievance dated December 28, 2009, states that "something happened while being transported to L.T.C.U.," see Inmate Grievance dated Dec. 28, 2009 at 8, while, on the other, Hinzo wrote that he "told the 2 doctors at L.T.C.U. and when I came back [from having his surgery] that there was something wrong," Inmate Grievance dated Sept. 18, 2009 at 4.  As the PFRD explains, and as the record supports, there is no evidence that Hinzo filed a grievance that mentions Gonzales' alleged reckless driving.  Hinzo's attempts to discover Gonzales' identity after instituting this action are irrelevant to whether he exhausted his administrative remedies.  The Court will therefore overrule this objection.

    **C.    THE COURT WILL OVERRULE HINZO'S OBJECTION TO JUDGE GARZA'S RECOMMENDATION THAT THE COURT DISMISS THE CLAIMS AGAINST WEXFORD MEDICAL, CORRECTIONAL MEDICAL, AND THEIR EMPLOYEES.**

Judge Garza recommends that Hinzo's claims against Wexford Medical, Correctional Medical, and their employees, because the conduct of these defendants failed to rise to the level of a constitutional violation. In his Objections, Hinzo recites the history of his injuries and the medical treatment he has received, insisting that Wexford Medical, Correctional Medical, and their employees failed to provide him adequate medical treatment. See Objections at 11-16, 19-27). Hinzo does not address Judge Garza's application of the law to his claims; he offers only conclusory statements about the inadequacy of his treatment and spends several pages explaining why he disagreed with his treatment. A prisoner who "merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dep't. of Corr., 165 F.3d 803, 811 (10th Cir. 1999). Furthermore, as Judge Garza explains, the escalating level of medical care provided that Wexford Medical, Correctional Medical, and their employees provided to Hinzo, as his medical records evidence throughout, does not support his claims of a constitutional violation. See Objections at 34. The Court will therefore overrule this objection.

    **D.    THE COURT WILL OVERRULE HINZO'S OBJECTIONS TO JUDGE GARZA'S RECOMMENDATION THAT THE COURT DISMISS THE CLAIMS AGAINST THE NEW MEXICO CORRECTIONS DEPARTMENT AND ITS EMPLOYEES.**

In his Objections, Hinzo states his disagreement with Judge Garza's recommendation to dismiss the claims against ("NMCD") and its employees. See Objections at 16-19. The Court's Memorandum Opinion and Order, filed February 22, 2012, however, dismissed all § 1983 claims against NMCD and its employees. The only claims that remain against the NMCD and its

employees, therefore, are those brought under the New Mexico Tort Claims Act ("NMTCA"), and Judge Garza properly recommends that the Court decline to exercise supplemental jurisdiction over those claims. Thus, the Court will overrule this objection.

## II.     THE COURT WILL DENY HINZO'S MOTION.

Hinzo requests that the Court allow him to present additional evidence in "support of the claims raised in his objections specifically the claim of prejudice by defendant [NMDC] for not providing an adequate law library." Motion at 1. Hinzo's Motion is a supplement to his Objections, and the Court has considered it. Parties are not, however, permitted to raise new claims in their objections to the magistrate judge's proposed findings and recommendations, and none of Hinzo's assertions in this document provide grounds on which to sustain his Objections.

**IT IS ORDERED** that: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed February 4, 2013, (Doc. 135), is adopted; (ii) the Plaintiff's Objections by Plaintiff Pro Se to the Honorable Magistrate Judge Carmen Garza's Proposed Findings and Recommended Disposition, filed March 4, 2013 (Doc. 139), are overruled; (iii) the Plaintiff's Motion by the Plaintiff Pro Se Requesting To Enter Evidence Into Objections That Was Not Available At The Time Objections Were Filed Feb. 26, 13, filed March 12, 2013 (Doc. 140), is denied; (iv) Summary Judgment is granted in favor of Defendants New Mexico Corrections Department, Joe Williams, John Doe, Tony LNU, Lawrence Jaramillo, Jerry Roark, Wayne Gallegos, and David Gonzales; (v) Summary Judgment is granted in favor of Correctional Medical Services, Inc., Dr. John Doe, Dr. Arnold, Dr. Stover, Dr. Debra Clyde, Dr. William Mizell, and Liane Lopez, RN; (vi) Summary Judgment is granted in favor of Defendants Wexford Health Services, Inc.; (vii) Plaintiff Justin James Hinzo's claims against Defendant G.E.O. are dismissed with prejudice; (viii) Hinzo's claims under the New Mexico Tort Claims

Act, N.M.S.A. 978, §§ 41-4-1 to -30, are dismissed without prejudice; and (ix) the Motion by Plaintiff Pro Se Requesting that the Court Enter Summary Judgment/Default Judgment Against Counsel Mr. Norman Weiss and All Defendants Represented by Mr. Norman Weiss for Failing to Serve the Court Ordered Martinez Report by July 10, 2012, and for as of now August 13, 2012, Still has Not Served Martinez Report, filed August 17, 2012 (Doc. 110), is denied as moot.

                                                                             _____
                                                                             UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Justin James Hinzo
Penitentiary of New Mexico
Santa Fe, New Mexico

       *Plaintiff pro se*

Norman F. Weiss
Meena H. Allen
Simone, Roberts & Weiss
Albuquerque, New Mexico

-- and --

Peter Andrew Robertson
Office of General Counsel
New Mexico Department of Corrections
Santa Fe, New Mexico

       *Attorneys for Defendant State of New Mexico Department of Corrections*

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

-- and --

Norman F. Weiss
Meena H. AllenSimone, Roberts & Weiss
Albuquerque, New Mexico

>   *Attorneys for Defendant George Tapia, Joe Williams, FNU Arnold, FNU Stover, and Liane Lopez*

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

>   *Attorneys for Defendant Wexford Medical Services*

Norman F. Weiss
Meena H. Allen
Simone, Roberts & Weiss
Albuquerque, New Mexico

>   *Attorneys for Defendant Correctional Medical Services, Inc.*